Columbia,
May, 1830.

CHAPPELL
v.
BROWN.

JOHN CHAPPELL v. JOHN BROWN, Administrator of WILLIAM
                          LOVE.

Under the act of 1789, a debt for rent ranks, in a course of administration,
   next to judgments, and executions, and before bonds and other obligations:
   and this precedence is not confined to rent, which accrued within a year,
   or any other period, preceding the death of the tenant; nor is it material,
   whether the rent was reserved by parol, or by specialty. P. L. 494.

An executor, or administrator, is not bound, in all cases, and under all circum-
   stances, to litigate his testator's or intestate's title to goods found in his pos-
   session at the time of his death, but which are claimed by third persons.
   He is intitled to exercise his discretion on the question of property, and if
   he surrender the goods, he cannot be made liable for the value, except upon
   proof of negligence, or fraud.

An executor, or administrator, cannot avoid a gift of his testator, or intestate,
   as fraudulent upon creditors.—vide Shelton v. Crosby, cited infra.

Tried before Mr. Justice O'NEALL, at Fairfield, Spring Term,
                          1830.

THIS was an action of assumpsit for the recovery of seven
years' rent of a tract of land, reserved on a lease by parol, all of
which accrued in the life time of the intestate. The defendant
pleaded the general issue, with notice of discount, and plene
administravit prater. Several questions were made upon the
evidence, which it is unnecessary to specify. It was con-
tended for the plaintiff, that he was intitled, under the act
of 1789, to priority of payment over bond and simple con-
tract creditors, for the whole of his demand. The presiding
Judge was of opinion, however, that the right to priority of pay-
ment was confined to rent, which accrued within the year, in
which the intestate died; and he therefore directed the jury, in
settling the accounts, to allow the plaintiff for the rent of the
six first years, as a simple contract creditor only. For the same
reason, he instructed the jury to credit the defendant for a pay-
ment to William A. Ford, for rent which accrued more than a
year prior to the intestate's death, as for a payment to a simple
contract creditor. His Honor also instructed the jury to charge
the defendant, as for assets in his hands, with the value of a
slave named Doll, and a horse, which were found in possession
of the intestate at his death, but which, having been claimed by
his children as their property, were surrendered to them by the

considered that the jury must necessarily have found that there was such a custom. This being so, we think that the court erred in instructing the jury that the measurement made by the city (for the purposes, as is to be understood, of a settlement between the city and the contractor for the work) might be considered as a guide to ascertain the quantity of granite in the sewer. There was no real controversy as to the whole area of the bottom of the sewer, nor as to the fact that the pavement of granite blocks was not coextensive with that area, by reason of the spaces filled with cement and broken stone, as above stated. But the city measured the whole area, including the portions filled with cement; and the practical effect of the instruction above referred to was that the jury might be guided by that fact in determining whether the same measurement—the whole area—should not be taken as the quantity of stone for which the plaintiff should recover under his contract of sale with the defendant. But the fact that the city adopted the whole area of the constructed work as the basis of settlement with the contractor, who had constructed that whole work, could hardly lead to the conclusion that in making the previous contract of sale the plaintiff and defendant had contemplated that such a method should be adopted to determine the quantity of stone sold. If the city was willing to accept the part constructed of broken stone and cement as a performance of its construction contract, that would not affect the question here in issue relating to a different contract between different parties,—the question as to the quantity of stone sold. It would be *res inter alios acta.*

The defendant asserted a counterclaim for damages arising from the fact that many of the stones were found to have such projections from their sides, or such irregular surfaces, that they did not conform to the requirements of the construction contract, so that they could not be used in this work without being redressed. The defendant introduced evidence to show the amount of the expense to which he was subjected in redressing the stones, and also that the stones were worth less by reason of such defects than they otherwise would have been. The court withdrew this counterclaim from the jury, and, as some question may arise concerning it on another trial, we will briefly refer to it. It does not appear upon what ground this ruling

of the court was based, but it is now contended by the respondent that by receiving and using the stones the defendant waived any objection which otherwise he might have had to their quality.

If, as the evidence tended to show, the plaintiff, who was engaged in quarrying or manufacturing stone, supplied these stones, on the order of the defendant, for this particular purpose, the contract being made with reference to the requirements of the construction contract, with the mutual understanding that they were to be applied to that use without further dressing, there would be an implied warranty that they should be reasonably fit for that purpose; that is, such as the construction contract called for.    This is a familiar legal proposition.    Such a case would be distinguishable from cases of executory sales by sample or by mere description, as well as from cases of sales of specific defined property; and the decisions in *Haase* v. *Nonnemacher*, 21 Minn. 486; *Maxwell* v. *Lee*, 34 Minn. 511, (27 N. W. Rep. 196;) and *Thompson* v. *Libby*, 35 Minn. 443, (29 N. W. Rep. 150,)—cited by the respondent,—would not be applicable.    If there was a warranty, either express or implied, that the stones should be such as to conform to the requirements of the construction contract, the defendant might recover damages for breach thereof, even though he received and used the stones.

Some assignments of error have not been particularly referred to, for the reason that they relate to questions which will not be likely to arise upon another trial.

Order reversed.

(Opinion published 53 N. W. Rep. 755.)